UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KNIGHTSCOPE, INC.,<br><br>                      *Plaintiff,*<br><br>    v.<br><br>CAPYBARA RESEARCH, IGOR APPELBOOM, and ACCRETIVE CAPITAL LLC d/b/a BENZINGA,<br><br>                    *Defendants.* | CIVIL ACTION NO. _____<br><br>**COMPLAINT** |

Plaintiff Knightscope, Inc. ("KSCP," "Knightscope" or "Plaintiff"), by and through their undersigned counsel, respectfully states as follows for its Complaint against Defendants Capybara Research ("Capybara Research" or "Capybara"), Igor Appelboom ("Appelboom," together with Capybara Research, the "Capybara Defendants") and Accretive Capital LLC d/b/a Benzinga ("Benzinga," together with the Capybara Defendants, "Defendants").

## THE PARTIES

1. Plaintiff Knightscope, Inc. is a Delaware corporation with its principal place of business and headquarters located at 1070 Terra Bella Avenue, Mountain View, California 94043.

2. Defendant Capybara Research is a short selling research firm with an unknown principal place of business.

3. Defendant Igor Appelboom is an individual who resides in the country of Brazil at Av Antonio Gil Veloso 2232, Es, Vila Velha, Brazil 29101-738.

4. Appelboom is the owner and operator of Capybara Research and the author and publisher of the Capybara Research Report.

1

5. Defendant Accretive Capital LLC d/b/a Benzinga owns and operates a financial news website.[1] Benzinga is headquartered in Detroit, Michigan at One Campus Martius, Suite 200, Detroit, Michigan 48226.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 because Plaintiff is asserting a claim under the Securities Exchange Act of 1934.

7. This Court has supplemental jurisdiction over Plaintiff's state law claim for tortious interference with prospective business expectancy pursuant to 28 U.S.C. § 1367, as the claims arise out of the same "common nucleus of operative facts" as Plaintiff's claim under the Securities Exchange Act of 1934.

8. This Court has personal jurisdiction over the out-of-state Defendant Benzinga pursuant to CPLR § 302(a)(3)(ii) because: (i) outside of the State of New York, Benzinga tortiously interfered with Plaintiff's business expectancy causing financial damages to Plaintiff in the State of New York; (ii) Benzinga reasonably should have expected its tortious acts would cause Plaintiff to suffer financial and reputational consequences; and (iii) Benzinga derives substantial revenue through interstate channels by providing services through its website to securities investors within the State of New York, including the authoring and publishing of articles related to companies publicly traded on the New York Stock Exchange, NASDAQ Stock Market and Over-The-Counter Markets.

9. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District.

---

[1] The URL for Benzinga's website is https://www.benzinga.com/.

## FACTUAL BACKGROUND

10. Knightscope is a publicly traded corporation incorporated in Delaware and headquartered in California. Knightscope's stock can be purchased and sold on the NASDAQ Stock Market, a stock exchange based in New York, NY, under the ticker symbol KSCP.

11. Capybara is a "short selling research firm" which writes, and subsequently self-publishes, articles referred to as "short seller reports" on its website (the "Capybara Website").[2] The Capybara Website was registered on July 16, 2023. *See* **Exhibit 1** at 1.

12. The Capybara Defendants also operate an X (f/k/a Twitter) account under the handle "@CapybaraShort" (the "Capybara Short Account"). The Capybara Short Account was also created in July 2023. *Id.* at 2.

13. The Capybara Defendants operate both the Capybara Website and Capybara Short Account anonymously and have concealed their identity while making their public communications.

14. On July 17, 2023, the Capybara Defendants posted to X a link to a "short report" on their website titled *Knightscope (KSCP) - From a RoboCop Inspired Fairytale to an Inevitable Dilution Dilemma $0.5 target* (the "First Capybara Report" or "First Report"). *See* **Exhibit 2**.

15. In the Capybara Reports, Capybara Research admits that it *"hold[s] a short position in shares of $KSCP...."* *Id.* at 2.

16. As of December 20, 2023, Capybara's tweet disseminating the First Capybara Report has been viewed by the general public no less than 23,500 times. *See* **Exhibit 3**.

17. On August 18, 2023, the Capybara Defendants posted a chain of tweets to X both further disparaging Plaintiff and containing a link to a second "short report" on their website titled

---

[2] The URL of the Capybara Website is https://www.capybararesearch.com/.

*More Problems at Knightscope (Supplemental to our initial report)* (the "Second Capybara Report" or "Second Report," together with the "First Capybara Report," the "Capybara Reports"). *See* **Exhibit 4**.

18. As of December 20, 2023, Capybara's tweet disseminating the Second Capybara Report has been viewed by the general public no less than 4,274 times. *See* **Exhibit 5**.

<u>*Separate Lawsuits Were Recently Filed in This District Against The Capybara Defendants*</u>

19. On October 19, 2023, a lawsuit was filed in this District by FingerMotion, Inc.[3] ("FingerMotion") against the Capybara Defendants alleging claims for securities fraud, tortious interference with prospective business expectancy and defamation against the Capybara Defendants.[4]

20. On October 31, 2023, FingerMotion filed an *ex parte* motion for permission to serve the defendants via Electronic Mail pursuant to Fed. R. Civ. P. 4(e)(1) and New York's CPLR § 308(5). *See* **Exhibit 6**.

21. On November 6, 2023, the Court entered an Order granting FingerMotion's motion in part, permitting FingerMotion to serve Capybara Research via email. *See* **Exhibit 7**. ("With respect to Capybara Research, the Court is satisfied with Plaintiff's showings that other means of service are impracticable and that its proposed service via email comports with due process").

22. On November 16, 2023, FingerMotion filed a motion for alternative service on Appelboom via email pursuant to Fed. R. Civ. P. 4(f)(3) in which FingerMotion indisputably connects Appelboom to Capybara Research. *See* **Exhibit 8**.

---

[3] FingerMotion is also represented by The Basile Law Firm, P.C. in its action against the Capybara Defendants.

[4] *See FingerMotion, Inc. v. Capybara Research et. al.*, Case No. 23-cv-09212-JPC (S.D.N.Y. Oct. 19, 2023), ECF 1.

23. On December 8, 2023, a separate lawsuit was filed in this District by Safety Shot, Inc.[5] ("Safety Shot") against the Capybara Defendants alleging claims for securities fraud and tortious interference with prospective business expectancy against the Capybara Defendants.[6] *See* **Exhibit 9**.

*The Individual Behind Capybara Research and the Capybara Reports*

24. In its filings, FingerMotion identified Appelboom as the individual who registered the Capybara Website using the email address igorappelboom@gmail.com.

25. Appelboom owns and operates an X account under the handle "@igorappelboom" to which Appelboom writes about his short selling of various stocks ("Appelboom Account"). *See* **Exhibit 10**.

26. The content Appelboom posts on the Appelboom Account is of identical subject matter to the content posted on the Capybara Account and contained in the Capybara Report—the *short selling* of the stock of publicly traded companies.

27. Pursuant to Exhibit 3 of FingerMotion's motion for alternative service, on and before November 16, 2023, the Google profile for Appelboom's email address, which registered the Capybara Website, showed a profile picture which was ***identical*** to the profile picture of the Appelboom Account[7]. *See* **Exhibit 11** at 1-2.

---

[5] Safety Shot is also represented by The Basile Law Firm, P.C. in its action against the Capybara Defendants.

[6] *See Safety Shot, Inc. v. Capybara Research et. al.*, Case No. 23-cv-10728 (S.D.N.Y. Dec. 8, 2023), ECF 1.

[7] Along with the profile picture, the banner image associated with the Appelboom Account was previously of the Christ the Redeemer statue located in Rio de Janeiro, Brazil. *See* **Exhibit 11** at 3; *see also FingerMotion*, Case No. 23-cv-09212-JPC, ECF 16-3.

28. Subsequent to the filing of FingerMotion's motion for alternative service on Appelboom, and likely in response to avoid the arguments and allegations contained therein, Appelboom changed the banner image of his X account to be of the Burj Al Arab hotel in Dubai, UAE and removed the profile picture from his Google profile. *See FingerMotion*, Case No. 23-cv-09212-JPC, ECF 16-3; ECF 16-4; *compare* **Exhibit 11** at 1-2 *with* **Exhibit 11** at 3-4.

29. In analyzing the information contained in the filings of FingerMotion in its lawsuit against the Capybara Defendants identifying the email address associated with the registration of the Capybara Website domain (the website publicly associated with the Capybara Account), the name, X handle, previous banner image and subject matter of the posts of the Appelboom Account, and the previously identical profile pictures for both Appelboom's email address' Google profile and the Appelboom Account, Plaintiff is certain that both the Appelboom and Capybara Accounts are owned and operated by Appelboom.

30. As such, Plaintiff reasonably believes the Capybara Report was authored and published by Appelboom.

*The Capybara Reports*

31. The First Capybara Report is filled with inaccuracies and misinformation intended to mislead investors and shareholders.

32. The First Capybara Report focuses on Plaintiff's history, management, business practices, and explicitly states that Plaintiff engages in deceitful and erratic business practices.

33. First, the First Capybara Report states that an increase in market price of Plaintiff's common stock from $0.38 to $2.16 was intentionally "fabricated" by Plaintiff to avoid a limitation on the capital it was allowed to raise pursuant to its S-3 registration ("Shelf Offering), dated February 1, 2023, and At-The-Market Agreement with HC Wainwright. *See* **Exhibit 2** at 22; **Exhibit 12** at 3.

6

34. Second, the First Capybara Report states Chief Executive Officer of Knightscope William Li, and by extension Plaintiff, raises capital by "exploit[ing] unsuspecting investors by heavily promoting [its] stock[]," and that there was "a clear agenda in play to promote the stock." *See* **Exhibit 2** at 3.

35. Third, the First Capybara Report unambiguously states that either Plaintiff's "equity will crater as extensive dilution is inevitable" or "it is likely that the company will file for bankruptcy." *See* **Exhibit 2** at 1.

36. The Second Capybara Report expands upon the inaccuracies contained in the First Capybara Report and facilitates additional misinformation aimed at additional damage to Plaintiff's share price, business and reputation including stating Plaintiff is intentionally "obscur[ing] the true economics of the business and hid[ing] poor performance." *See* **Exhibit 4** at 1.

*Benzinga Facilitates Further Dissemination of the First Capybara Report*

37. On July 17, 2023, Benzinga also posted two articles on its website entitled *Watching Knightscope; Capybara Research Releases Short Report On Co Titled "Knightscope - From A RoboCop Inspired Fairytale To An Inevitable Dilution Dilemma $0.5 Target"* and *Knightscope Shares Tumble on Short Report: The Details*, both of which spread the defamatory First Capybara Report to Benzinga subscribers and users of various brokerage services (the "Benzinga Articles"). *See* **Exhibit 13**.

38. The Benzinga Articles contained a link to the First Capybara Report on the Capybara Website, indicating the authors' intent for readers to click the link to read the content of the defamatory article. *Id*.

39. Prior to the publication of the Benzinga Articles, a director at Benzinga reached out to William Li for a comment on the First Capybara Report. *See id.* at 5. Despite being aware of the content of the First Capybara Report, Benzinga proceeded to publish the Benzinga Articles.

40. The Benzinga Articles sparked fervent online discussion, as well as additional discussion of the First Capybara Report, on X, facilitating further dissemination of the defamatory First Report and causing additional interference with Plaintiff's prospective business expectancy and share value.

41. To date, the Benzinga Articles remain unretracted on its website and are available for any Benzinga subscriber to view.[8]

*Knightscope, Inc.'s Promotional Practices*

42. The First Capybara Report states William Li, and by extension Plaintiff, raises capital by "exploit[ing] unsuspecting investors by heavily promoting [its] stock[]," and that there was "a clear agenda in play to promote the stock." *See* **Exhibit 2** at 3, 22.

43. The First Capybara Report further states that "Knightscope is known for its constant stock promotion" through the use of third parties such as the Stock Day Podcast, a company that Capybara Research alleges "receive[s] $ in exchange for promoting … mostly OTCs and shady businesses" and alleging Plaintiff "spend[s] more money and time on promoting their stock, vs anything else" by including a screenshot of various press releases and announcements by Plaintiff between May 16 and August 14, 2023. *See id.* at 27-31.

---

[8] Happy Mohamed, *Watching Knightscope; Capybara Research Releases Short Report On Co Titled "Knightscope - From A RoboCop Inspired Fairytale To An Inevitable Dilution Dilemma $0.5 Target"* (July 17, 2023), available at https://www.benzinga.com/news/23/07/33249134/watching-knightscope-capybara-research-releases-short-report-on-co-titled-knightscope-from-a-robocop (last accessed December 20, 2023). *See also Knightscope Shares Tumble on Short Report: The Details* (July 17, 2023), available at https://www.benzinga.com/news/23/07/33253122/knightscope-shares-tumble-on-short-report-the-details (last accessed December 20, 2023).

44. While Plaintiff does engage in the employment of third parties for advertising and utilizes press releases to promote its business, none of Plaintiff's means of self-promotion are outside normal practices of promotion or advertising, as the First Capybara Report suggests.

45. The First Capybara Report does not explain how Li, and by extension Plaintiff, "exploit[s] unsuspecting investors" and, instead, only sought to mislead the public, tarnish Plaintiff's reputation and depress Plaintiff's share price so that Capybara Research can financially benefit from its disclosed short position in Knightscope.

46. Plaintiff, like every other public company, generates interest in its stock, but does not entice individuals to invest without a comprehensive understanding of fundamentals and risks, as the First Capybara Report suggests.

47. Being a public company, Plaintiff publicly files its quarterly and annual reports with the Securities and Exchange Commission.

48. The reports are available to the public and contain Plaintiff's financial reports, risks, analysis, and ongoing litigation for investors and potential investors to read, understand, and appreciate.

*Knightscope, Inc.'s Valuation and Effect on Dilution*

49. Plaintiff's market capitalization on July 14, 2023, the trading day before the First Capybara Report was published, was over $166,966,700.[9] *See* **Exhibit 4** at 4.

50. On February 1, 2023, Plaintiff filed its Form S-3 in connection with its Shelf Offering, which contained two prospectuses: (i) the issuance and sale of up to $100,000,000 in the aggregate in KSCP common stock; and (ii) an At-The-Market Agreement with HC Wainwright

---

[9] Market Capitalization = (Outstanding Shares * Market Price) = (75,380,000 * $2.215) = $166,966,700.

9

where up to $20,000,000 of KSCP common stock may be issued and sold through HC Wainwright, acting as KSCP's sales agent. *See* **Exhibit 12** at 3.

51. The First Capybara Report unambiguously states that, as a result of both the Shelf Offering and At-The-Market Agreement, either Plaintiff's "equity will crater as extensive dilution is inevitable" or "it is likely that the company will file for bankruptcy." *See* **Exhibit 2** at 1.

52. The existence of both the Shelf Offering and the At-The-Market Agreement does not necessarily mean that KSCP stock dilution is inevitable, nor does it mean that it will have a negative effect on the value of KSCP's stock, as the Capybara Report claims. Rather, the Shelf Offering and the At-The-Market Agreement would cause an increase in the interest of prospective and current investors to purchase KSCP common stock, which would result in the newly-issued KSCP stock being purchased on the market. As a result of the newly-issued stock being purchased, there would be minimal to no stock dilution, as any newly-issued stock may be purchased by current shareholders.

53. Further, as the Capybara Reports concede, both the Shelf Offering and the At-The-Market Agreement allow KSCP to issue KSCP common shares directly to the open market as a means to raise cash, which would benefit KSCP as a whole. Both the Shelf Offering and the At-The-Market Agreement allow Plaintiff to gain financing and working capital to fund its intended business plans which, in turn, will raise the value and result in the reverse dilution of the KSCP common stock.

54. Due to the effect of the Capybara Reports on the market price of KSCP stock to date, both the Shelf Offering and At-The-Market Agreement have become inherently less valuable and more dilutive. As a result of a **68.39%** drop in the market price of KSCP stock, KSCP must

now sell **68.39%** more shares of its stock in its Shelf Offering and At-The-Market Agreement to raise the same amount of capital.

55. As such, both the Capybara Report and the subsequent short selling of KSCP shares account for the decline in KSCP common stock, not Plaintiff's announcement of the Shelf Offering or the At-The-Market Agreement.

*The Effect of the Capybara Reports on Knightscope, Inc.'s Market Value*

56. Exactly one week before the First Capybara Report was released, on Monday, July 10, 2023, KSCP's share price increased from $0.847 per share to $2.16 per share at the close of the market on Friday, July 14, 2023. *See* **Exhibit 14** at 2.

57. On July 17, 2023, the date Capybara released the First Capybara Report, KSCP opened with a market price of $2.215 per share and closed with a market price of $1.66 per share, a staggering **28.64% decrease**. *Id.*

58. During the week prior to the Second Capybara Report's release, from Friday, August 11, 2023, KSCP's share price continued to decrease from $1.50 per share to $1.29 per share at the close of the market on Friday, July 17, 2023. *See id.* at 3.

59. On August 18, 2023, the date the Second Capybara Report released, KSCP's market price decreased to $1.26 per share. *Id.*

60. KSCP has 75.38 million shares outstanding.[10] As a result of the drop in market price since July 17, 2023, the market capitalization[11] of KSCP dropped from $166,966,700[12] to

---

[10] *See* Yahoo Finance, Knightscope, Inc. Share Statistics (last accessed December 20, 2023), https://finance.yahoo.com/quote/KSCP/key-statistics?p=KSCP.

[11] Market capitalization refers to the total dollar market value of a company's outstanding shares of stock or what the public market determines a company is worth.

[12] Market Capitalization = (Outstanding Shares * Market Price) = (75,380,000 * $2.215) = $166,966,700.

11

$97,240,200,[13] a difference of **$71,987,900**. To date, KSCP stock has not traded at the same value that the stock opened at on July 17, 2023, $2.215 per share.[14] By extension, to date, Plaintiff's market capitalization also has not rebounded to pre-July 17, 2023 levels.

61. Further, as a result of the Capybara Reports, short volume in KSCP rose significantly. On July 10, 2023, one week before the First Capybara Report was released, the short volume was approximately 3,569,113 shares shorted. On July 17, 2023, the short volume was approximately 8,096,563 shares shorted, more than **2.27** times the amount shorted a week earlier.[15]

*The Capybara Reports Interfered with Knightscope, Inc.'s Natural Business Expectations*

62. Plaintiff expected and anticipated natural volatility in the market value of its common shares on July 17, 2023, the date that the First Capybara Report was published and made available online to the public.

63. Plaintiff, and its shareholders, never expected the market value of its common stock to decline by **28.64%** on July 17, 2023 as a result of the release of the First Capybara Report and by **68.39%** to date.

64. Plaintiff, and its shareholders, expected only legitimate and natural market forces to impact the value of KSCP stock.

65. The Capybara Reports were external, non-natural forces that impacted the market value of KSCP common stock.

---

[13] Market Capitalization = (Outstanding Shares * Market Price) = (75,380,000 * $1.26) = $94,978,800.

[14] According to Yahoo Finance's Historical Data, KSCP's market price was $0.64 per share at the close of the trading day on November 30, 2023. *See* Yahoo Finance, Knightscope, Inc. Historical Data (last accessed December 20, 2023), https://finance.yahoo.com/quote/KSCP/history?p=KSCP.

[15] Information gathered from FINRA, *Daily Short Sale Volume Files* (last accessed December 20, 2023), https://www.finra.org/finra-data/browse-catalog/short-sale-volume-data.

66. Plaintiff did not anticipate the Capybara Reports to be released, and certainly did not anticipate the Capybara Reports to contain any falsities, half-truths, and misleading statements that would negatively impact the value of its common stock and prospective business relations.

67. Upon information and belief, the Capybara Defendants knew and intended for the Capybara Reports to result in the decline in market value of KSCP common stock.

68. Upon information and belief, it was foreseeable to the Capybara Defendants that the Capybara Reports would result in a decrease in market value of KSCP common stock.

69. Upon information and belief, the Capybara Defendants knew that the Capybara Reports would harm Plaintiff's reputation, and therefore, negatively impact Plaintiff's prospective business relations.

70. But for the Capybara Reports, the market value of KSCP common stock would not have aggressively declined on and after July 17, 2023.

71. Additionally, but for the Capybara Reports, the daily short volume of KSCP common stock would not have been as substantial.

*The Capybara Defendants Knowingly Published False and Misleading Information in the Capybara Reports*

72. The Capybara Defendants defamed Plaintiff by providing false information in the Capybara Reports about Plaintiff's business practices to the general public resulting in damages to Plaintiff's stock price, market capitalization, and reputation.

73. The Capybara Defendants' defamatory statements were published in writing for the public to view. Specifically, the Capybara Reports are libel *per se* because the Capybara Reports state false facts that tend to injure Plaintiff concerning its business, trade, and profession.

74. The Capybara Defendants acted with actual malice or a reckless disregard for the truth because the Capybara Defendants knew that the statements contained within the Capybara Reports were false at the time of publishing, yet still proceeded to publish the Capybara Reports.

75. As of December 20, 2023, Capybara's tweets disseminating the Capybara Reports have been viewed by the general public no less than 27,774 times combined.

76. To this day, the Capybara Reports are still available for the public to view and read on both the Capybara Website and X.

77. Plaintiff is not a public figure.

78. As a result of the Capybara Defendants' false statements and misleading information in the Capybara Reports, the market value of KSCP stock has sharply declined, injuring Plaintiff and its shareholders, as well as injuring Plaintiff's reputation, business, trade, and profession.

## FIRST CAUSE OF ACTION

*Securities Fraud Against the Capybara Defendants*

79. Plaintiff repeats, reiterates, and re-alleges each and every allegation of the paragraphs as though fully set forth herein.

80. "It shall be unlawful for any person, directly or indirectly, by the use of the mails or any means or instrumentality of interstate commerce, or of any facility of any national securities exchange, or for any member of a national securities exchange to effect, alone or with one or more other persons, a manipulative short sale of any security." 15 U.S.C. § 78i(d).

81. "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—[t]o effect a short sale, or to use or employ any stop-loss order in connection with the purchase or sale, of any security other than a government security, in contravention of

such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(a)(1).

82. The Capybara Defendants made public communications in an effort to manipulate the general investing public into selling their KSCP shares or into opening short positions in order to capitalize on a drop in share price. This is confirmed by a disclosure in the First Capybara Report which states "*[w]e hold a short position in shares of $KSCP....*" *See* **Exhibit 2** at 2; **Exhibit 5** at 2.

83. The Capybara Defendants acted intentionally to drive down the price of KSCP common stock in a manipulative fashion. Because it held a short position, the Capybara Defendants would financially benefit from a decline in Plaintiff's stock price.

84. The foregoing facts give rise to a strong inference that the Capybara Defendants acted with intentionality and recklessness as to how their public communication and the Capybara Reports would spread across social media and motivate investors to react by creating short selling downward pressure on KSCP's market price. KSCP's market price has not rebounded to pre-July 17, 2023 levels as the short selling of KSCP stock has increased dramatically. These short sales are directly caused by the Capybara Reports.

85. Plaintiff's share value, business opportunities and shareholders' long positions—which relied on an efficient market free of manipulation—were artificially manipulated to Plaintiff's detriment, thereby causing Plaintiff damages in an amount to be proven at trial.

86. As a result, Plaintiff is further entitled to an award of attorney's fees and costs pursuant to 15 U.S.C. § 78u-4(c), to the extent the Capybara Defendants interpose defenses in violation of Fed. R. Civ. P. 11(b).

**SECOND CAUSE OF ACTION**

*Tortious Interference with Prospective Business Expectancy*
*Against the Capybara Defendants and Benzinga*

87. Plaintiff repeats, reiterates, and re-alleges each and every allegation of the paragraphs as though fully set forth herein.

88. Plaintiff has and had a valid business expectation that its common stock will only be subject to normal, marketplace, and general business risks of investment.

89. The Capybara Defendants' conduct was wrongful, because it involved illegal stock market manipulation in violation of federal securities laws quoted above.

90. The Capybara Defendants knew that Plaintiff, as well as holders of KSCP common stock, had an expectation that pure market forces, not false and manipulative public statements, would impact the value of their investments and equity.

91. The Capybara Defendants intentionally and directly caused a deluge of short selling trades, putting down pressure on Plaintiff's stock price.

92. The Capybara Defendants' conduct disrupted Plaintiff's expectations of only legitimate market forces impacting the value of its stock.

93. Benzinga's supplementary dissemination of the Capybara Reports caused additional third-parties, including investors, to short Plaintiff's common stock, directly causing additional downward pressure on Plaintiff's share price.

94. Plaintiff had a valid business expectation that it would be able to sell its shares of common stock at a higher price or would be able to realize an increased market price.

95. Plaintiff suffered damages as a result of the tortious interference in its business expectancy as a result of Defendants' actions.

96. Accordingly, Plaintiff is entitled to damages in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

*Defamation Against the Capybara Defendants and Benzinga*

97. Plaintiff repeats, reiterates, and re-alleges each and every allegation of the paragraphs as though fully set forth herein.

98. The Capybara Defendants made malicious and knowingly false assertions of fact—not opinions—tending to harm the reputation, prospects for success and profitability, the legal legitimacy, and character of Plaintiff.

99. The assertions of fact constitute libel, and more specifically, libel *per se*.

100. The Capybara Defendants have caused damage to Plaintiff in a direct and proximate fashion for which demonstrable damages have been sustained, as particularly shown by the KSCP market fluctuations and stock prices.

101. The Capybara Defendants acted with reckless disregard as to the truth or falsity of their assertions.

102. There is no public figure, public official, or public comment immunity or qualified immunity for the defamatory statements made by the Capybara Defendants.

103. Upon information and belief, the Capybara Defendants sought to or actually did enrich themselves by injuring Plaintiff's reputation for the Capybara Defendants' own financial gain or reputational enhancement.

104. The Capybara Defendants' conduct is over the level of reprehensibility so as to justify the imposition of exemplary and punitive damages in an amount of a proportion to the actual damages thereby caused.

105. Further, in the Benzinga Articles, Benzinga re-published a link to the defamatory First Capybara Report on its website, effectively republishing the First Capybara Report and

expanding the audience beyond X users who were aware of the links posted on the Capybara Account. *See* **Exhibit 13**.

106. Any article authored and published by Benzinga is available on its own website for Benzinga subscribers to view.

107. Further, when Benzinga articles are published to its website, they are also displayed as news articles on investor's brokerage accounts.

108. The Benzinga Articles sparked fervent online discussion, as well as renewed discussion of the First Capybara Report on X, facilitating further dissemination of the defamatory First Capybara Report, causing additional damage to Plaintiff's share price and reputation.

109. To date, the Benzinga Articles remain unretracted on its website and are available for any Benzinga subscriber to view.

110. Accordingly, Plaintiff is entitled to damages in an amount to be determined at trial.

111. Plaintiff hereby demands a trial by jury and declines to waive the same.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff seeks a Verdict and Judgment against Defendants as follows:

A. Awarding Plaintiff compensatory, special, incidental and punitive damages, in an amount to be determined at trial, plus post-judgment interest at the legal rate from the date of the verdict until paid in full;

B. Awarding attorneys' fees and costs to the extent available under 15 U.S.C. § 78u-4(c), together with post-judgment interest at the legal rate from the date of judgment until paid in full;

C. Issuing an order directing the Capybara Defendants to publicly retract the Capybara Report in writing;

D.       Issuing an injunction preventing the Capybara Defendants from communicating about Plaintiff on any social media website or posting articles about Plaintiff on its website, except for a public written retraction of the Capybara Report;

E.       Issuing an order directing Benzinga to remove and publicly retract the Benzinga Articles republishing the First Capybara Report, in writing; and

F.       Awarding such other just and/or equitable relief as this Court deems necessary.

DATED: December 20, 2023       Respectfully submitted,

**THE BASILE LAW FIRM P.C.**

*/s/ Waleed Amer*
Waleed Amer, Esq.
Mark R. Basile, Esq.
390 N. Broadway, Ste. 140
Jericho, NY 11753
Tel.:     (516) 455-1500
Fax:    (631) 498-0748
Email:  waleed@thebasilelawfirm.com
           mark@thebasilelawfirm.com

*Attorneys for Plaintiff Knightscope, Inc.*